_ Tilghman C. J.,
, .. delivered the opinion or the Court.
The defendant in this case challenged the array of jurors, and the Court overruled the challenge. Whether there was *396 good cause for challenge, is the question. 1£ there was, the defendant will be entitled to a new trial.
Five reasons have been offered in support of the challenge. 1st. That the sheriff was not present the whole time during which the selection of jurors was made. 2d. That the sheriff and commissioners took up between two and three weeks in making the selection and putting the names of the jurors into the wheels. 3d. That it did not appear that the sheriff and commissioners wrote the names of the jurors selected by them, and put the same into the wheels. 4th. That the pieces of paper on which the names were written, were not safely kept between the time of writing- and of putting them, into the wheels. 5th. That the names which were remaining in the wheels at the end of the year, were taken out before the names selected for the new year were put in.
• 1. The act of assembly (29th March, 1805,) directs “ That the sheriff and county commissioners, or two of the said commissioners, shall meet, at least thirty days previously to the first Court of Common Pleas to be holden in each year, and select, from the list of taxable inhabitants, the names of a sufficient number of sober and judicious persons, to serve as jurors in the several Courts to be holden in that year, and shall write the names of the persons so selected on a small piece of paper, which pieces of paper are to be folded, so that the names do not appear, and put into two wheels, marked No. 1 and No. 2. The names of the persons intended for grand jurors' shall be put into No. 1, and of those intended for petit jurors into No. 2.” The acts of selecting, writing the names on paper, and putting them into the wheels, are to be the joint work of the sheriff and commissioners. It is necessary, therefore, that both sheriff and commissioners should be present. It appears that, in this case, the sheriff, from time to time, went out of the room where the business was done, and returned again, but nothing'material was done during his absence. The law does not require that the sheriff shall never leave the room—his absence cannot vitiate the proceedings, provided he be present at the actual doing of the business. There is no weight, therefore, in this objection.
2d. It was necessary to select between three and four thousand names for the county of Philadelphia., and between two and three weeks were spent in the business. The law prescribes no limitation of time. All that can be said, therefore, *397 is, that the work should be executed with due diligence. The sooner it is done, the better; and, in case of gross neglect of dutv, the sheriff and commissioners would be liable to an in- ' . dictment. Perhaps more time than was necessary, was consumed in selecting the jurors on the present occasion j but it does not appear to the Court that there was sufficient cause to quash the array, even though the officers* were not quite so industrious as they might have been. There is no allegation of partiality or mal-practice of any kind.
3d. As to the writing of the names, it was done by a clerk, in the presence, and by the orders, of the sheriff and commis- ' sioners. What was thus done by their clerk, was done by themselves. There is nothing in this objection.
4th. The papers on which the- selected names were, written, were put into a box, where they were kept until the selection was completed, and they were then put into the wheels. This box, for any thing that appears, was-kept with sufficient care, although it was not locked up in one of the fire-proof closets. There was-no evidence which justified a suspicion of the names having been changed, before they were put into the wheels; we ought not, therefore, to suppose that they were changed. All that cán be said; is, that it was possible to have kept the -box in a manner that would have afforded less opportunity for changing the names. But that is not good cause for quashing the array.
5th. The act of assembly provides, <c That the sheriff and commissioners shall , always select and deposit a number of names sufficient in each and every wheel, so that at the last drawing in every year, the number requisite for one jury, at least, shall remain in each wheel.” It is not quite clear what was the reason of this provision. Probably it was to insure a sufficient number of jurors, until the first drawing should-take place from the new selection. In the. present instance, the wheels were emptied, and all the old names thrown out before the new ones were put in. Still, we are to presume, that the officers complied with the law, by putting in a sufficient number of new names, so as to insure the number requisite-for one jury to be remaining in each wheel at the last drawing. The defendant cannot have suffered by the throwing out of the old names ; because the jury by which he was tried, was drawn in the beginning of the year, from a full wheel. I do not think that the sheriff and commissioners' *398 were bound to keep the old names in the wheels, provided they took care that there should always be a sufficient number in the wheels to furnish the juries that should be called for that year, and leave the number requisite for one jury remaining in each wheel at the last drawing.
I am of opinion, upon the whole, that there was no, good cause for challenge of the array, and, therefore, the motion for a new trial should be rejected.
, . New trial refused.